# Exhibit A

 **CT Corporation**

**Service of Process Transmittal**
05/22/2017
CT Log Number 531270956

TO: Barbara Williams
The Talbots, Inc.
175 Beal St
Hingham, MA 02043-1512

RE: **Process Served in California**

FOR: The Talbots, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Lynette Fliegelman, on behalf of herself and all other similarly situated, Pltf. vs. The Talbots, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s), Declaration(s), Letter(s), Notice(s), Cover Sheet(s), Instructions |
| **COURT/AGENCY:** | Ventura County - Superior Court - Ventura, CA Case # 56201700496659CUBTVTA |
| **NATURE OF ACTION:** | Plaintiff Complaint regarding Unfair Business Practices in Violation of California Business & Professions |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/22/2017 at 14:55 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Zev B. Zysman Law Offices of Zev B. Zysman, PC 15760 Ventura Boulevard, 16th Floor Encino, CA 91436 818-783-8836 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/23/2017, Expected Purge Date: 05/28/2017 |
| | Image SOP |
| | Email Notification, Barbara Williams  BARBARA.WILLIAMS@TALBOTS.COM |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of  1 / DB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

*5/22/17 @ 238*

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

THE TALBOTS, INC, and DOES 1 through 100, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

LYNETTE FLIEGELMAN, on Behalf of Herself and All Others Similarly Situated,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**VENTURA SUPERIOR COURT**
**FILED**

MAY 17 2017

MICHAEL D. PLANET
Executive Officer and Clerk
BY:_____, Deputy
**JILL KAMINSKI**

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Ventura County Superior Court, 800 South Victoria Avenue, Ventura, CA 93009

**CASE NUMBER:**
56-2017-00496659-CU-BT-VTA

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Zev B. Zysman, LAW OFFICES OF ZEV B. ZYSMAN, 15760 Ventura Blvd., 16th Floor, Encino, CA 91436

**Michael D Planet**

DATE: **MAY 17 2017**
*(Fecha)*

Clerk, by _____ , Deputy
*(Secretario)* **JILL KAMINSKI** *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* The Talbots, Inc.

under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☒ by personal delivery on *(date):* 5/22/17

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

1  LAW OFFICES OF ZEV B. ZYSMAN
   A Professional Corporation
2  Zev B. Zysman (176805)
   zev@zysmanlawca.com
3  15760 Ventura Boulevard, 16th Floor
   Encino, CA 91436
4  Tel.:   818-783-8836
   Fax:   818-783-9985
5
   Attorneys for Plaintiff and
6  the Proposed Class

7

8

9

10

11

12  LYNETTE FLIEGELMAN, on behalf of
    herself and all others similarly situated,
13
             Plaintiffs
14
    vs.
15
    THE TALBOTS, INC. and DOES 1 through
16  100, inclusive,

17           Defendants.

18

19

20

21

22

23

24

25

26

27

28

VENTURA
SUPERIOR COURT
FILED

MAY 17 2017

MICHAEL D. PLANET
Executive Officer and Clerk
BY:_____, Deputy
JILL KAMINSKI

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF VENTURA

CASE NO.   56-2017-00496659-CU-BT-VTA

CLASS ACTION COMPLAINT

1. Unfair Business Practices in Violation
   of California Business & Professions Code
   Sections 17200, *et seq.*
2. Fraudulent Business Practices in
   Violation of California Business &
   Professions Code Sections 17200, *et seq.*
3. Unlawful Business Practices in
   Violation of California Business &
   Professions Code Sections 17200, *et seq.*
4. False Advertising in Violation of
   California Business & Professions Code
   Sections 17500, *et seq.*
5. Violations of California Consumer
   Legal Remedies Act

CLASS ACTION COMPLAINT

1    Plaintiff Lynette Fliegelman ("Plaintiff"), brings this action against Defendant The
2  Talbots, Inc. ("Defendant" or "Talbots") and DOES 1-100 on behalf of herself, and all others
3  similarly situated, upon information and belief, except as to her own actions, the investigation of
4  her counsel, and the facts that are a matter of public record, as follows:

5
                                      **INTRODUCTION**
6

7    1.    This class action arises out of Defendant's unlawful, unfair, and fraudulent business
8  practice commonly referred to as "false reference pricing." "False reference pricing" is the act of
9  misrepresenting the original or regular price of some good that is purportedly offered at a "sale
10 price," a business practice that Defendant engages in to increase sales. As alleged herein, during
11 at least the past four years, Defendant has misled consumers by advertising the false former or
12 purported "regular" prices which were fabricated, and corresponding phantom "savings" on
13 women's apparel, shoes, accessories and other items sold in its Talbots "Outlet" stores in
14 California.

15   2.    California law prohibits the discounting of retail merchandise from its original
16 price for more than ninety (90) days. *See* California Business & Professions Code §17501.
17 Federal regulations also mandate that a retailer offer only genuine discounts from regular retail
18 prices; not false discounts from inflated original prices. *See* 16 C.F.R. §233.1.

19   3.    Some retailers, such as Talbots, employ false reference pricing because it misleads
20 consumers into believing that they are "getting a good deal," thereby increasing sales. The United
21 States Court of Appeals for the Ninth Circuit succinctly explained: "Most consumers have, at
22 some point, purchased merchandise that was marketed as being 'on sale' because the proffered
23 discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a
24 bargain, therefore have an incentive to lie to their customers by falsely claiming that their products
25 have previously sold at a far higher 'original' price in order to induce customers to purchase
26 merchandise at a purportedly marked-down 'sale' price. Because such practices are misleading –
27 and effective – the California Legislature has prohibited them." *Hinojos v. Kohl's Corp.*, 718 F.3d

28

                                          2

1098, 1101 (9th Cir. 2013).

4.     The intentional use of false and fraudulent reference pricing tactics is increasingly deceiving consumers in the market. To illustrate, on January 30, 2014, four members of Congress demanded a Federal Trade Commission ("FTC") investigation of misleading marketing practices by outlet stores across the United States. The four Members of Congress described a pricing scheme similar to the one implemented at Talbots Outlet stores and stated: "[h]owever, we are concerned that outlet store consumers are being misled into believing they are purchasing products originally intended for sale at the regular retail store. Many outlets may also be engaged in deceptive reference pricing. It is a common practice at outlet stores to advertise a retail price alongside the outlet store price – even on made-for-outlet merchandise that does not sell at regular retail locations. Since the item was never sold in the regular retail store or at the retail price, the retail price is impossible to substantiate. We believe this practice may be a violation of the FTC's Guides     Against     Deceptive     Pricing     (16     CFR     233)."   *See* www.whitehouse.senate.gov/news/release/sens-and-rep-to-ftc-outlet-stores-may-be-misleading-consumers.

5.     During the Class Period (defined below), Defendant continuously advertised false price discounts for merchandise sold throughout its Outlet stores in California. Defendant would offer substantial discounts from the "regular" prices listed on the original price tag. Specifically, the words "Special Value" are set forth on every price tag in the Outlet stores to indicate the "regular" price at which merchandise was purportedly offered for sale. The represented, "Special Value" prices on the price tags were also false "regular" prices. In fact, based on Plaintiff's investigation, the "Special Value" prices were artificially inflated and were never the true regular prices for merchandise sold at Talbots Outlet stores. In addition, the represented "Special Value" prices were not the prevailing market retail prices within three months next immediately preceding the publication and dissemination of the advertised former prices, as required by California law.

6.     Defendant conveys its deceptive pricing scheme through in store signage offering steep discounts from the "Special Value" regular prices listed on the products' price tags in the

3

1  Outlet stores. The "Special Value" regular prices listed and advertised on Defendant's price tags
2  are fake reference prices; utilized only to perpetuate Defendant's fake-discount scheme. The
3  pricing scheme is prominently displayed on virtually all items throughout the store. There are
4  typically large placard signs on top of or alongside each rack of clothing or accessories,
5  advertising a "discounted % off," or a "discounted whole-price" reduction for the item. For
6  example, a product may have a price tag with a "regular" price of $89.50 and the related signage
7  advertising "40% Off Regular-Price Items," which is substantially less than the regular price listed
8  on the price tag. *See* Exhibit "A." Another example is a product having a price tag with a
9  "regular" price of $69.50 and the related signage advertising a "sale price" of $29.99. *See* Exhibit
10  "B." However, the "Special Value" regular prices listed on the price tags have never existed
11  and/or were not the prevailing market retail prices for such products within the three months next
12  immediately preceding the publication of the price tags, as required by California law. They are
13  fictional creations intentionally designed to enable Defendant's phantom markdowns.
14  Furthermore, upon check-out, Defendant provides California consumers, including Plaintiff, with
15  sales receipts continuing the misrepresentations regarding false price reductions. For example, the
16  stated *discount* from the false former "regular" price is listed for each item purchased.

17         7.     Talbots knows consumers are bargain-hunters, and knows consumers are lured by
18  the prospect of a bargain at "Outlet" stores. "Outlet" stores are commonly understood by the
19  public to be selling the same merchandise that the manufacturer typically sells at its regular non-
20  outlet retail stores, but at a discount. According to <u>Business Insider</u>, "[t]he common assumption
21  about outlet stores is that you're getting the same goods that are in a regular store without the big
22  price tag." *See* http://www.businessinsider.com/outlet-stores-arent-a-good-deal-2014-5. However,
23  outlet stores typically sell different merchandise than their retail counterparts, without informing
24  customers that this is the situation.

25         8.     In this case, Defendant offers for sale products manufactured exclusively and
26  intended solely for sale in its Outlet stores. Further exacerbating consumers' perception of deep
27  discounts is the fact that Defendant sells higher quality products at its company-operated mainline
28

4

1   retail stores. Defendant knows that consumers expect to receive a discount when shopping at its

2   Outlet stores, and accordingly, preys on consumer expectations by artificially marking up the

3   regular price of its products and then offering discounts off of the artificially inflated regular price

4   to induce consumers to purchase their products. The regular price exists to provide an illusory

5   discount when compared to the actual sales price offered. This tactic is called "reference pricing."

6   The regular price listed on the price tags were and are the prices chosen by Defendant to enable it

7   to engage in its phantom markdown scheme.

8      9.    Defendant conveys its deceptive pricing scheme to consumers through promotional

9   materials, in-store advertising displays, and print advertisements which are uniform. Upon

10   information and belief, Defendant's false price advertising scheme has been rampant throughout

11   California as part of a massive, years-long, pervasive campaign and has been consistent across all

12   of Defendant's exclusive branded apparel and accessories sold in its Outlet stores. Indeed, most,

13   if not all products sold in Talbots Outlet stores are subject to the same fraudulent pricing scheme

14   complained of herein.

15      10.    Upon information and belief, thousands of Defendant's consumers in California,

16   including Plaintiff, were victims of Defendant's deceptive, misleading, and unlawful false pricing

17   scheme. This deception will continue if Defendant is not enjoined from continuing its pricing

18   scheme.

19      11.    Defendant knows or should reasonably know that its comparative price advertising

20   is false, deceptive, misleading and unlawful under California law.

21      12.    Defendant has fraudulently concealed from, and intentionally failed to disclose to,

22   Plaintiff and other members of the Class, the true facts about its product prices and falsely

23   advertised price discounts from those purported "regular" prices.

24      13.    At all relevant times, Defendant has been under a duty to Plaintiff and the Class to

25   disclose the truth about its former "regular" prices and false discounts.

26      14.    The facts which Defendant misrepresented or failed to disclose are material facts

27   that a reasonable person would have considered material, i.e., facts which would contribute to a

28

1   reasonable person's decision to purchase Defendant's merchandise. Defendant's false

2   representations of former "regular" prices and false representations of purported savings, discounts

3   and bargains are objectively material to the reasonable consumer, including Plaintiff, and therefore

4   reliance upon such representations may be presumed as a matter of law.

5   15.   Plaintiff relied upon Defendant's false representations of regular prices and

6   discounts when purchasing merchandise from Talbots Outlet store. Plaintiff would not have made

7   such purchases, but for Defendant's false representations and fraudulent omissions of the regular

8   price of the items purchased, as compared with the supposedly discounted or sale price at which

9   Plaintiff purchased the items.

10   16.   Plaintiff reasonably believed the truth of the represented prices attached to the price

11   tags, or in advertisements or on signage regarding, products purchased at Talbots Outlet store,

12   which expressly represented that Plaintiff was getting a substantial percentage discount or whole-

13   price reduction off the products. Plaintiff reasonably understood the price on the price tag to be a

14   valid representation of the former regular price. However, because Defendant never adopted its

15   own former regular price, its former price merely constituted a ploy to conjure the illusion of a

16   non-existent "discount" on goods that were never offered anywhere close to the higher price

17   Defendant claimed.

18   17.   Plaintiff and the Class reasonably and justifiably acted and relied on the substantial

19   price differences that Defendant advertised, and made purchases believing that they were

20   receiving a substantial discount on an item of greater value than it actually was. Plaintiff and the

21   Class reasonably understood the price on the price tags to be a valid representation of a former

22   regular price. However, the price on the price tags did not represent a former price or the

23   prevailing market prices for the products. Plaintiff, like other Class members, was lured in, relied

24   on, and was damaged by these pricing schemes that Defendant carried out.

25   18.   Defendant intentionally concealed and failed to disclose material facts regarding

26   the truth about its misrepresentations and false former price advertising scheme for the purpose of

27   inducing Plaintiff and Class members to purchase merchandise in its Talbots Outlet stores.

28

6

19.    Through its false and deceptive marketing, advertising and pricing scheme, Defendant has violated, and continues to violate California law prohibiting advertising goods for sale as discounted from purported former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions.    Specifically, Defendant has violated, and continues to violate, California's Business & Professions Code §§ 17200, *et seq.* (the "UCL"), California's Business & Professions Code §§ 17500, *et seq.* (the "FAL"), and the California Consumers' Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements.  15 U.S.C. § 52(a).

20.    Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased one or more items at Talbots Outlet stores in California that were deceptively represented as discounted from false former prices in order to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased such products.    Plaintiff seeks restitution and other appropriate equitable remedies, including an injunction under the UCL and FAL; and an injunction under the CLRA.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over the causes of action asserted herein pursuant to California Code of Civil Procedure § 410.10 and Article VI, § 10 of the California Constitution. In the aggregate, the damages caused to the members of the Class as defined below exceed the jurisdictional minimum of this Court, but neither the Plaintiff nor any member of the Class individually has suffered damages of, at least, $75,000.

22.    This Court has personal jurisdiction over the Defendant named herein because Defendant does sufficient business in California, has sufficient minimum contacts with California and/or otherwise intentionally avails itself of the markets within California through its sales,

7

1    advertising and marketing to render the exercise of jurisdiction by California courts and the

2    application of California law to the claims of the Plaintiff permissible under traditional notions of

3    fair play and substantial justice.

4         23.    Venue is proper in this Court since, as detailed below, the named Plaintiff is a

5    resident of this County, the acts and transactions giving rise to this action occurred in this County,

6    a substantial number of Defendant's acts occurred in this County, and Defendant received

7    substantial compensation from sales of its products in this County by doing business here. Thus,

8    as to the named Plaintiff and other Class members, certain obligations and liability of the

9    Defendant arose in part in this County.

10                              **THE PARTIES**

11

12   A.    Plaintiff

13        24.    Plaintiff Lynette Fliegelman ("Fliegelman") is a citizen and resident of Ventura

14   County, California. It is alleged that on December 19, 2016, in reliance on Defendant's false and

15   deceptive advertising, marketing and pricing schemes, Plaintiff purchased over $54.00 in

16   exclusive branded apparel at Talbots Outlet store located in Camarillo, California, and was

17   damaged thereby.

18   B.    Defendant

19        25.    Defendant The Talbots, Inc. ("Talbots") is a Delaware corporation which is

20   licensed to do, and is doing, business throughout the United States, with its principal place of

21   business located at One Talbots Drive, Hingham, Massachusetts 02043. Defendant owns and

22   operates Talbots Outlet stores in California, and advertises, markets, distributes, and/or sells

23   women's apparel, shoes, accessories and other items in California and throughout the United

24   States.

25        26.    The only stores that are the subject of this Complaint are the Talbots Outlet stores

26   located in California.

27

28

8

C.   Doe Defendants

27.   The true names and capacities of Defendants sued in this Complaint as Does 1 through 100, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names. Plaintiff will amend this Complaint to reflect the true names and capacities of the Defendants designated herein as Does 1 through 100, when they have been ascertained, along with the appropriate charging allegations, as may be necessary.

28.   Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations when the same have been ascertained. Each reference in this Complaint to "Talbots" or "Defendant" is also a reference to all Defendants sued as Does 1 through 100.

D.   Agency/Aiding And Abetting

29.   Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting within the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

30.   Plaintiff is further informed and believes, and on that basis alleges, that Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

9

31.     Whenever reference is made in this Complaint to any act of "Talbots" or "Defendant," such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## CONDUCT GIVING RISE TO THE VIOLATIONS OF THE LAW

A.     Plaintiff's Purchases

32.     On December 19, 2016, Plaintiff went shopping at the Talbots Outlet store in Camarillo, California to purchase clothing and related apparel for herself.  She observed an exterior window display that advertised "Up to 60% Entire Store."

33.     Upon entering the store, Plaintiff observed prominent signage on top of or alongside each rack of clothing or accessories, advertising a "discounted % off," or a "discounted whole-price" reduction for each item offered for sale.  Believing she was able to pay significantly less than what certain products were worth and normally sell for in the marketplace, Plaintiff was induced to purchase three different items, all of which were offered at prices significantly lower than their stated "regular" prices.  Plaintiff purchased the items after relying on Defendant's false discounts and false "regular" former prices for such products.

34.     Specifically, relying upon Defendant's misrepresentations and false and deceptive advertising, Plaintiff was induced to purchase the following three items: a long-sleeve crewneck tee-shirt, item number 9000163285158764211762 bearing a price tag of "$26.00," a long-sleeve crewneck tee-shirt, item number 9000163285158204211890 bearing a price tag of "$26.00," and a long-sleeve denim shirt, item number 9010163287434094238320 bearing a price tag of "$74.50." See true and correct copies of price tags attached to clothing which Plaintiff purchased on December 19, 2016, attached hereto as Exhibit "C."

CLASS ACTION COMPLAINT

35.    Plaintiff observed signage adjacent to and above these items that advertised percentage discounts of "60% Off Regular-Price Items." The signs were located near the items offered for sale, clearly indicating that the items were being sold at significant discounts off their "regular" prices.   The tee-shirts contained price tags representing them to have a regular "Special Value" price of $26.00, and the signage which represented that the tee shirts were on sale for "60% Off Regular-Price," leaving a discount and savings of $15.60, and purchase price at $10.40. The long-sleeve denim shirt contained a price tag representing it to have a regular "Special Value" price of $74.50, and the signage which represented that the denim shirt was on sale for "60% Off Regular-Price," leaving a discount and savings of $44.70, and purchase price at $29.80.

36.    Relying on Defendant's misrepresentations and false and deceptive advertising and believing that she was receiving a significant discount by purchasing these items at 60% off the "regular" price, Plaintiff decided to purchase the items and proceeded to the cash register where she did in fact purchase the items.  Plaintiff also believed she was purchasing merchandise that was of the same like, kind and quality of that sold in the regular company-operated retail stores. These purported "regular" prices and corresponding price reductions and savings were false and deceptive, as the prevailing market retail price for the three shirts during the three months immediately prior to Plaintiff's purchase of such items were never at the represented former "regular" prices.  Plaintiff would not have purchased the shirts in the absence of Defendant's misrepresentations.  Instead, Defendant continuously offered the subject shirts, like the majority of products offered for sale at Talbots Outlet stores, for sale at discounted prices.   As a result, Plaintiff has been personally victimized by and suffered economic injury as a direct result of Defendant's unlawful, unfair and fraudulent conduct.

37.    Furthermore, upon check-out on December 19, 2016, Defendant provided Plaintiff with a sales receipt containing the same misrepresentations regarding false price reductions off the regular prices on the three shirts.  The sales receipt clearly represented that Plaintiff was receiving the benefit of a "60%" discount off the "Regular Price" for each item purchased and listed the discount or savings amount for each item, and then the sales price after the purported discount.

11

1   *See* true and correct copy of Plaintiff's sales receipt, dated December 19, 2016, attached hereto as

2   Exhibit "D."

3         B.    <u>Defendant Engages In Deceptive Advertising</u>

4        38.    Subsequent to Plaintiff's purchase, an investigation conducted on behalf of Plaintiff

5   confirmed that the "regular" prices listed on the price tags for Plaintiff's purchases at Talbots

6   Outlet stores were never the prevailing market price at Talbots Outlet stores in the preceding 90

7   days before Plaintiff's purchase.   Additionally, the investigation revealed that Defendant's

8   deceptive advertising practices were systematic and pervasive at *Talbots* Outlet stores as items

9   remain continuously discounted from their "regular" price tag price or they are not offered for sale

10   at their "regular" price tag price for any substantial period of time, and in most cases, not at all,

11   and in compliance with California law.  Indeed, in most instances, *new* items appear at the Talbots

12   Outlet stores that are immediately discounted, rendering the "Special Value" regular prices

13   completely meaningless, false, and misleading. The difference between the discounted sale prices

14   and the "Special Value" regular price is a false savings percentage or whole-price reduction used

15   to lure consumers into purchasing products they believe are significantly discounted.  In addition,

16   the clothing and many of the other items sold at Talbots Outlet stores are manufactured for, and

17   sold *exclusively* by, those Outlets, which means that such items were never sold – or even intended

18   to be sold – at the regular price listed on their price tags.  Most, if not all, of these items were

19   never offered for sale in Talbots' non-outlet retail stores in California.

20        39.    By failing to price clothing and other items at their actual regular price for a

21   substantial period of time, Defendant artificially inflated the market price or value of the clothing

22   and other items it sells, including the shirts purchased by Plaintiff.  Moreover, by failing to price

23   its merchandise, including the shirts purchased by Plaintiff at their regular price for a substantial

24   period of time, and in compliance with California law, Defendant interfered with market forces,

25   driving the selling price of its products higher than they would be if Defendant had complied with

26   the law.

27

28

CLASS ACTION COMPLAINT

40.     Defendant's false discounting practice, as described herein, has the effect of setting an artificially high market value for its "on sale" merchandise. Customers, like Plaintiff, purchase merchandise from Defendant believing they are receiving a substantial discount on their purchases, when in fact they are not. They are instead purchasing an item they would not otherwise buy and paying a higher price than they would otherwise pay were the products subject to fair market competition and pricing.

41.     Plaintiff's and Class members' reliance upon Defendant's false price comparison advertising was not only reasonable, but entirely intended by Defendant.  In fact, empirical marketing studies demonstrate that reference pricing actually creates an impression of higher value and an incentive for retailers to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings . . . . [A] comparative price advertisement can be construed as deceptive if it makes any representation, . . . . or involves any practice that may materially mislead a reasonable consumer.

*Comparative Price Advertising: Informative or Deceptive?*, Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing*, Vol. 11, No. 1, at 52 (Spring 1992). Furthermore:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product. . . . Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id.* at 55, 56.

42.     A retailer's "reference price," the stated price presented alongside the retailer's "on sale" price, provides consumers a reference point with which to evaluate the prospective purchase.

13

The reference price is often described with terms such as "Regular Price," 'Original Price," and/or "Former Price."

43.     A retailer's reference price impacts the consumer's behavior in the marketplace. As the reference price increases, so does the consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.

44.     When the reference price is bona fide and truthful, it helps consumers make informed purchasing decisions. In contrast, consumers are harmed when merchants advertise their products alongside falsely-inflated former prices, i.e., "false reference prices," as consumers are provided a false sense of value. In this context, the reference price is no longer informative but deceptive because consumers are deprived of a full and fair opportunity to accurately evaluate the specific sales offer in its relevant market. As the Ninth Circuit recognizes, "[m]isinformation about a product's "normal" price is . . . significant to many consumers in the same way as a false product label would be." *See Hinojos v. Kohl's Inc.* 718 F.3d at 1106.

45.     Moreover, the hidden nature of false discounting makes it effective. Consumers, like Plaintiff, unaware of the practices at issue, instead complete their purchases believing that they "got a good deal." Retailers, like Defendant, make falsely-discounted sales without suspicion because consumers do not have access to the comprehensive historical pricing information necessary to reveal the deception.

46.     The full extent of Defendant's false and deceptive pricing scheme can only be revealed through a full examination of records exclusively in the possession of Defendant.

47.     Plaintiff would purchase Defendant's products in the future from Talbots Outlet stores, if price tags accurately reflect former "regular" prices and "sales" prices were not marketed in a deceptive manner that is likely to mislead consumers like herself. Currently, however, Plaintiff and other consumers have no realistic way to know which – if any – of Defendant's price tags and sale prices are not false or deceptive. If the Court were to issue an injunction ordering Defendant to comply with California's comparative price advertising laws, and prohibiting

14

1   Defendant's use of the deceptive practices discussed herein, Plaintiff would be able to make

2   informed purchase decisions for Defendant's products at Talbots Outlet stores.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

5       48.    Plaintiff brings this action on behalf of herself, and all others similarly situated.

6   The proposed Class that Plaintiff seeks to represent is defined as follows:

> All persons who, while in the State of California, during the four (4) year period
> preceding the filing of this Complaint through the date of final judgment in this
> action (the "Class Period"), purchased from Defendant one or more products at a
> purported discount off of the stated regular price at any one of Defendant's Outlet
> stores in the State of California, and who have not received a refund or credit for
> their purchase(s).

13       49.  Excluded from the Class are Defendant; its corporate parents, subsidiaries, affiliates,

14   and any entity in which Defendant has a controlling interest; any of its officers, directors,

15   employees, or agents; the legal representatives, successors or assigns of any such excluded persons

16   or entities; and the judicial officers to whom this matter is assigned as well as their court staff.

17   Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the

18   addition of one or more subclasses, in connection with her motion for class certification, or at any

19   other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during

20   discovery.

21       50.    The members of the Class are so numerous that joinder of all members is

22   impracticable.  While the exact number of Class members is unknown to Plaintiff at this time,

23   Plaintiff estimates that the Class consists of thousands of members.  Moreover, Plaintiff alleges

24   that the precise number of Class members, their identities, and their locations can be ascertained

25   though appropriate discovery and records of Defendant and its agents.  Defendant keeps extensive

26   computerized records of its customers through, *inter alia*, customer loyalty programs, co-branded

27   credit cards and general marketing programs. Defendant has one or more databases through which

28

CLASS ACTION COMPLAINT

1  a significant majority of Class members may be identified and ascertained, and it maintains
2  contact information, including email and home mailing addresses, through which notice of this
3  action could be disseminated to potential Class members in accordance with due process
4  requirements.

5      51.    There is a well-defined community of interest in the questions of law and fact
6  affecting the parties represented in this action.

7      52.    Common questions of law and fact exist as to all members of the Class. These
8  common questions predominate over the questions affecting only individual members of the Class.

9      53.    Among the questions of law and fact common to the Class are, *inter alia*:

10     a.    Whether, during the Class Period, Defendant used false "regular" price tags and
11 falsely advertised price discounts on merchandise it sold in its California Talbots Outlet stores;

12     b.    Whether, during the Class Period, the "regular" prices advertised by Defendant
13 were the prevailing market prices for the respective merchandise sold by Defendant during the
14 three month period preceding the dissemination and/or publication of the advertised former prices;

15     c.    Whether Defendant's use of false or deceptive price advertising constituted false
16 advertising under California law;

17     d.    Whether Defendant engaged in unfair, unlawful and/or fraudulent business
18 practices under California law;

19     e.    Whether Defendant misrepresented and/or failed to disclose material facts about its
20 product pricing and discounts;

21     f.    Whether Defendant has made false or misleading statements of fact concerning the
22 reasons for, existence of, or amounts of price reductions;

23     g.    Whether Defendant's conduct, as alleged herein, was intentional and knowing;

24     h.    Whether Class members are entitled to damages and/or restitution; and, if so, what
25 is the amount of revenues and/or profits Defendant received and/or was lost by Class members as
26 a result of the conduct alleged herein;

27

28

16

i.      Whether an injunction is necessary to prevent Defendant from continuing to use false, misleading or illegal price comparisons; and

j.      Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

54.     Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class members. Plaintiff and the Class she seeks to represent have all been deceived (or were likely to be deceived) by Defendant's false former price advertising scheme, as alleged herein.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

55.     Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the Class members she seeks to represent. Plaintiff will fairly and adequately represent and protect the interest of the Class because she is not antagonistic to the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of consumer fraud and class action litigation.

56.     A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's and Class members' claims. Because of the relatively modest size of individual Class members' claims, few, if any, Class members could afford to seek legal redress of the wrongs complained of herein on an individual basis. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendant will be permitted to retain the proceeds of its unfair and unlawful misdeeds.

57.     All Class members, including Plaintiff, were exposed to one or more of Defendant's misrepresentations or omissions of material fact claiming that former "regular" advertised prices were in existence.  Due to the scope and extent of Defendant's consistent false price advertising scheme, disseminated in a massive, years-long campaign to California consumers via in-store display advertising, print advertising, and the like, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class. In addition, it can be reasonably presumed that all Class members, including Plaintiff,

17

1 | affirmatively acted in response to the representations contained in Defendant's false advertising
2 | scheme when purchasing merchandise at Defendant's Outlet stores.

## FIRST CAUSE OF ACTION

Violation Of The "Unfair" Prong Of The UCL
(By Plaintiff and the Class Against Defendant)

58.   . Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

59.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

60.    The UCL imposes strict liability.   Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – only that such practices occurred.

61.    A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

62.    Defendant has violated and continues to violate the "unfair" prong of the UCL by representing a false "regular" price and corresponding price discount for its products sold at Talbots Outlet stores where Defendant, in fact, inflated the purported "regular" prices for such products such that the promised discount was false, misleading and deceptive.

63.    Defendant's acts and practices are unfair because they caused Plaintiff, and are likely to cause consumers, to falsely believe that Talbots Outlet stores are offering value, discounts or bargains from the prevailing market value or worth of the products sold that did not, in fact, exist. As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices (and are, therefore, worth more) than what they paid. This perception has induced reasonable purchasers, including Plaintiff, to buy such products, which they otherwise would not have purchased.

18

64.     The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of Defendant for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, Defendant engaged in unfair business practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

65.     As a direct and proximate result of Defendant's acts and practices, Plaintiff and Class members have suffered injury in fact and have lost money or property as a result of purchasing Defendant's products.

66.     Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SECOND CAUSE OF ACTION

### Violation Of The "Fraudulent" Prong Of The UCL
### (By Plaintiff and the Class Against Defendant)

67.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

68.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

69.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

70.     Defendant's price tags, marketing and advertising materials concerning false former "regular" prices were "fraudulent" within the meaning of the UCL because they deceived Plaintiff, and were likely to deceive members of the Class, into believing that Defendant was

19

offering value, discounts or bargains at Talbots Outlet stores from the prevailing market value or worth of the products sold that did not, in fact, exist. As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception induced reasonable purchasers, including Plaintiff, to buy such products from Defendant, which they otherwise would not have purchased.

71. Defendant's acts and practices as described herein have deceived Plaintiff and were highly likely to deceive members of the consuming public. Specifically, in deciding to purchase products from Talbots Outlet stores, Plaintiff relied on Defendant's misleading and deceptive representations regarding its "Special Value" regular prices, and "sale" prices. Each of these factors played a substantial role in Plaintiff's decision to purchase those products, and Plaintiff would not have purchased those items in the absence of Defendant's misrepresentations. Accordingly, Plaintiff suffered monetary loss as a direct result of Defendant's practices described herein.

72. As a direct and proximate result of Defendant's acts and practices, Plaintiff and Class members have suffered injury in fact and have lost money or property as a result of purchasing Defendant's products.

73. As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

74. Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

20

**THIRD CAUSE OF ACTION**

Violations Of The "Unlawful" Prong Of The UCL
(By Plaintiff and the Class Against Defendant)

75.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

76.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

77.   A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

78.   The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. § 52(a)). The FTC has established *Guidelines that describe false former pricing schemes,* similar to Defendant's in all material respects, as deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial price, inflated price was established for the purpose of enabling the subsequent offer of a *large reduction* – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular

21

1   course of her business, honestly and in good faith – and, of course, not for the
2   purpose of establishing a fictitious higher price on which a deceptive comparison
3   might be based.

4   16 C.F.R. § 233.1.

5       79.    California statutory and regulatory law also expressly prohibits false former pricing
6   schemes. Cal. Bus. & Prof. Code § 17501, entitled *"Value determinations: Former price*
7   *advertisements,"* states:

8       For the purpose of this article the worth or value of any thing advertised is the
9       prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at
10      retail, at the time of publication of such advertisement in the locality wherein the
11      advertisement is published.

12      *No price shall be advertised as a former price of any advertised thing, unless the*
13      *alleged former price was the prevailing market price as above defined within three*
14      *months next immediately preceding the publication of the advertisement* or unless
15      the date when the alleged former price did prevail is clearly, exactly and
16      conspicuously stated in the advertisement. [Emphasis added.]

17      80.    As detailed in Plaintiff's Fifth Cause of Action below, Cal. Civ. Code § 1770,
18  subsection (a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell
19  them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or
20  misleading statements of fact concerning reasons for, existence of, or amounts of price
21  reductions."

22      81.    Defendant's use of and reference to a materially false "regular" price, or purported
23  percentage discount or whole-price reduction in connection with its marketing and advertisements
24  concerning the merchandise sold at Talbots Outlet stores violated and continues to violate the
25  FTCA, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at Title
26  16, Code of Federal Regulations, Section 233. It also violated and continues to violate Cal. Bus.
27  & Prof. Code § 17501, and Cal. Civ. Code § 1770, sections (a)(9) and (a)(13) by advertising false

28

22

1    discounts from purported former prices that were, in fact, not the prevailing market prices within
2    three months next preceding the publication and dissemination of advertisements containing the
3    false former prices.

4          82.     As a direct and proximate result of Defendant's acts and practices, Plaintiff and
5    Class members have suffered injury in fact and have lost money or property as a result of
6    purchasing Defendant's products.

7          83.     As a result of the conduct described above, Defendant has been unjustly enriched at
8    the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been
9    unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained
10   absent its false, misleading and deceptive conduct.

11        84.     Through its unfair acts and practices, Defendant has improperly obtained money
12   from Plaintiff and the Class. As such, Plaintiff requests that this Court cause Defendant to restore
13   this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate
14   the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and
15   the Class may be irreparably harmed and/or denied an effective and complete remedy if such an
16   order is not granted.

17

18                       **FOURTH CAUSE OF ACTION**

19            Violation Of California False Advertising Law
            California Business & Professions Code Sections 17500, *et. seq.*
20               (By Plaintiff and the Class Against Defendant)

21        85.     Plaintiff re-alleges and incorporates by reference the allegations contained in the
22   preceding paragraphs as though fully set forth herein.

23        86.     The California False Advertising Law prohibits unfair, deceptive, untrue, or
24   misleading advertising, including, but not limited to, false statements as to worth, value and
25   former price.

26   ///

27   ///

28

87.   Cal. Bus. & Prof. Code § 17500 provides that:

[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . .

personal property . . . to induce the public to enter into any obligation relating

thereto, to make or disseminate or cause to be made or disseminated . . . from

this state before the public in any state, in any newspaper or other

publication, or any advertising device, or by public outcry or proclamation,

or in any other manner or means whatever, including over the Internet, any

statement . . . which is *untrue* or *misleading*, and which is known, or which

by the exercise of reasonable care should be known, to be untrue or misleading . . .

[Emphasis added.].

88.   The "intent" required by Cal. Bus. & Prof. Code § 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

89.   Similarly, Cal. Bus. & Prof. Code § 17501 provides, "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement."

90.   Defendant's routine practice of advertising "Special Value" regular prices on all of its exclusive, made for Talbots Outlet merchandise, which were never the true prevailing prices of those products was an unfair, deceptive and misleading advertising practice.   This deceptive marketing practice gave consumers the false impression that the products sold at Talbots Outlet stores were regularly sold in the retail marketplace at substantially higher prices than they actually were. Therefore, leading to the false impression that the merchandise was worth more than it actually was.

91.   Defendant misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code, as alleged above.

24

92.     As a direct and proximate result of Defendant's acts and practices, Plaintiff and Class members have suffered injury in fact and have lost money or property as a result of purchasing Defendant's products.

93.     Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate the False Advertising Law as discussed herein in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FIFTH CAUSE OF ACTION

For Violation Of The Consumer Legal Remedies Act
California Civil Code Sections 1750, *et. seq.*
(By Plaintiffs and the Class Against Defendant)

94.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

95.     This cause of action is brought pursuant to the CLRA.

96.     Plaintiff and each member of the proposed Class are "consumers" within the meaning of California Civil Code § 1761(d).

97.     Defendant's sale of merchandise to Plaintiff and the Class were "transactions" within the meaning of California Civil Code § 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

98.     As described herein, Defendant violated, and continues to violate, the CLRA by falsely representing the nature, existence and amount of price discounts by fabricating inflated "Special Value" regular prices. Such a pricing scheme is in violation of Cal. Civ. Code § 1770, subsection (a)(9) ("[a]dvertising goods or services with intent not to sell them as advertised") and subsection (a)(13) ("[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions").

25

99.     Plaintiff relied on Defendant's false representations in deciding to purchase merchandise from Defendant. Plaintiff would not have purchased such merchandise absent Defendant's unlawful conduct. As a result of these acts and practices, Plaintiff suffered damage in that she spent money at Talbots Outlet store that she would not have otherwise spent absent Defendant's unlawful and misleading acts and practices.

100.     Pursuant to Section 1782(a) of the CLRA, on May 17, 2017, Plaintiff's Counsel, on behalf of Plaintiff Fliegelman, served Defendant by United States certified mail, return receipt requested, with notice of Defendant's particular violations of the CLRA and requested that Defendant identify victims, notify victims and remedy its illegal conduct within 30 days.

101.     Plaintiff has requested that Defendant timely respond to the CLRA demand notice and presently seeks only injunctive relief pursuant to the CLRA. If Defendant fails to fully, completely and timely comply with Plaintiff's demand letter, Plaintiff will amend this Complaint to seek actual and punitive damages, as appropriate, under the CLRA. Under California Civil Code §1782(d), after the commencement of an action for injunctive relief, and after compliance with the provisions of Section 1782(a), Plaintiff may amend her Complaint without leave of court to include a request for damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, prays for relief and judgment against Defendant as follows:

1.     For an order certifying this matter as a class action and designating Plaintiff as the Class Representative and Plaintiff's Counsel as Class Counsel;

2.     For an order awarding restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

3.     For appropriate injunctive relief as permitted by law or equity;

4.     For an order directing Defendant to engage in a corrective advertising campaign;

26

5.     For an award of attorneys' fees as authorized by statute including, but not limited to, the provisions of California Civil Code § 1780(e), California Code of Civil Procedure § 1021.5, as authorized under the "common fund" doctrine, and as authorized by the "substantial benefit" doctrine;

6.     For costs of the suit incurred herein;

7.     For prejudgment interest at the legal rate; and

8.     For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for Plaintiff and the Class as to all issues so triable.

Dated: May 17, 2017                    LAW OFFICES OF ZEV B. ZYSMAN, APC

ZEV B. ZYSMAN
Attorneys for Plaintiff Lynette Fliegelman and
The Proposed Class

27

CLASS ACTION COMPLAINT

# EXHIBIT A

PM

$89.50





# EXHIBIT B

TAL
OUTLET

903 02 00
300269   76
50046799

CURVY

6

SPECIAL VALUE
$69.50



# EXHIBIT C

**TALBOTS**
OUTLET.

900 01 63
285158 76
42117762

M

SPECIAL VALUE
$26.00

TALBOTS
OUTLET

900 01 63
285158   20
42118190

M

SPECIAL VALUE
$26.00

TALBOTS
OUTLET

901 01 63
287434  09
42383620

M

SPECIAL VALUE
$74.50

# EXHIBIT D

TALBOTS #4016
CAMARILLO OUTLET
800 VENTURA BLVD.SUITE.620
CAMARILLO, CA 93010
805-383-0602

# TALBOTS
## OUTLET

STORE: 4016     REG: 3     TRANS: 5396
SALE          12/19/2016  EMP: 0091208
Cashier: 0216512

| | | |
|---|---|---|
| *LS CREW NK | 42118190 | 10.40 |
| 60% Off Regular Price | | 15.60- |
| *LS CREW NK | 42117762 | 10.40 |
| 60% Off Regular Price | | 15.60- |
| *CTTN/TENCEL DENIM | 42383620 | 29.80 |
| 60% Off Regular Price | | 44.70- |

| | |
|---|---|
| Subtotal | 50.60 |
| CA COUNTY TAX 1.250% | 0.63 |
| CA STATE TAX 6.250% | 3.16 |
| Total | 54.39 |
| Visa | 54.39 |

************7263 C
AID A0000000031010
VISA CREDIT
TC 305242A81506E637
AUTH:019956
TERMINAL ID 001

#3

## CUSTOMER COPY

12/19/2016 12:08:44 PM

THANK YOU FOR SHOPPING AT TALBOTS

Did you earn points today?
Classic Awards members earn
points toward $25 Rewards
every time they make a purchase.
Look below to see how many points
Classic Awards members earned today.

| Classic Awards Members earn: | |
|---|---|
| Classic Awards Premier: | 63 |
| Classic Awards Credit Card: | 51 |
| Classic Awards Loyalty: | 25 |

For more information or to enroll, see
a Sales Associate, call 1-800-825-2687
or visit talbots.com/classicawards.

T1139XH11611CYJ4APG01

LAW OFFICES OF ZEV B. ZYSMAN
A Professional Corporation
Zev B. Zysman (176805)
zev@zysmanlawca.com
15760 Ventura Boulevard, 16th Floor
Encino, CA 91436
Tel.:   818-783-8836
Fax:   818-783-9985

Attorneys for Plaintiff and
the Proposed Class

VENTURA
SUPERIOR COURT
FILED

MAY 1 7 2017

MICHAEL D. PLANET
Executive Officer and Clerk
BY:_____, Deputy
JILL KAMINSKI

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF VENTURA

| | |
|---|---|
| LYNETTE FLIEGELMAN, on behalf of herself and all others similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>THE TALBOTS, INC. and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.        56-2017-00496659-CU-BT-VTA<br><br>DECLARATION OF PLAINTIFF IN SUPPORT OF VENUE PURSUANT TO CIVIL CODE §1780(d) |

DECLARATION OF PLAINTIFF IN SUPPORT OF VENUE

1    I, Lynette Fliegelman, declare as follows:

2        1.    I am a competent adult, am a resident of the State of California, and am a Plaintiff

3    in this matter. I have personal knowledge of the facts set forth below, and if called upon to testify

4    to the same, I could and would do so competently and truthfully.

5        2.    This declaration is submitted in accordance with California Civil Code §1780(d).

6        3.    This action has been commenced in a county described in California Civil Code

7    §1780 as a proper place for the trial of the action. The transaction or a substantial portion thereof

8    occurred in the County of Ventura.

9        I declare under penalty of perjury under the laws of the State of California that the

10   foregoing is true and correct.

11       Executed this _16_ day of May 2017 at Oak Park, CA.

12

13                                    LYNETTE FLIEGELMAN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DECLARATION OF PLAINTIFF IN SUPPORT OF VENUE**

# LAW OFFICES OF ZEV B. ZYSMAN
### A PROFESSIONAL CORPORATION

15760 Ventura Boulevard, 16th Floor
Encino, California 91436
818.783.8836 Main | 818.783.9985 Fax

May 17, 2017

<u>VIA CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

The Talbots, Inc.
Camarillo Outlet
800 Ventura Blvd., Suite 620
Camarillo, CA 93010

     Re:    *Fliegelman v. The Talbots, Inc.*

Dear Sir or Madam:

We represent Lynette Fliegelman (Plaintiff) and all other similarly situated California residents described in the operative Complaint (enclosed for your reference), on whose behalf we are sending this letter pursuant to California Civil Code § 1782 in order to notify The Talbots, Inc. ("Talbots") of the nature of her claim, and to demand curative actions. This action against Talbots arises of its false and misleading advertising and marketing of purported "regular" prices, and corresponding phantom "savings" on women's clothing, shoes, accessories, and other accessories sold at Talbots Outlet stores in California (the "Products").

As you are aware, Talbots routinely offers its Products for sale in its Outlet stores in California at substantial discounts. Talbots conveys its deceptive pricing scheme to consumers through promotional materials, in-store-displays, and print advertisements. The pricing scheme is prominently displayed, advertising deep discounts from the "regular" prices listed on the original price tag. Specifically, the words "Special Value" are set forth on every price tag in the Outlet stores to indicate the "regular" price at which merchandise was purportedly offered for sale. The represented, "Special Value" prices on the price tags were also false "regular" prices; utilized only to perpetuate Talbots deceptive discount scheme. There are typically large signs on top of or alongside each rack of clothing or accessories, advertising a "discounted % off," or a "discounted whole-price" reduction for the item. For example, a Product may have a price tag with a "regular" price of $89.50 and the related signage advertising "40% Off Regular-Price Items," which is substantially less than the regular price listed on the price tag.

May 17, 2017
Page 2

Another example is a Product having a price tag with a "regular" price of $69.50 and the related signage advertising a "sale price" of $29.99. Furthermore, upon check-out, Talbots provides California consumers, including Plaintiff, with sales receipts continuing the misrepresentations regarding false price reductions. For example, the stated *discount* from the false former "regular" price is listed for each item purchased.

However, the "Special Value" regular prices listed on the price tags have never existed and/or were not the prevailing market retail prices for such products within the three months next immediately preceding the publication of the price tags, as required by California law. They are fictional creations intentionally designed to enable Talbots' phantom markdowns. Additionally, Talbots offers for sale Products manufactured exclusively and intended solely for sale in its Outlet stores. Further exacerbating consumers' perception of deep discounts is the fact that Defendant sells higher quality products at its company-operated mainline retail stores. Talbots knows that consumers expect to receive a discount when shopping at its Outlet stores, and accordingly, preys on consumer expectations by artificially marking up the regular price of its Products and then offering discounts off of the artificially inflated regular price to induce consumers to purchase their Products. The regular price exists to provide an illusory discount when compared to the actual sales price offered.

Through its false and deceptive marketing, advertising and pricing scheme, Talbots has violated, and continues to violate California law prohibiting advertising goods for sale as discounted from purported former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions. Indeed, Talbots used fabricated regular prices which did not reflect a price at which Talbots' Products are routinely, if ever, sold to customers. Specifically, Talbots has violated, and continues to violate, California's Business & Professions Code §§ 17200, *et seq.* (the "UCL"), California's Business & Professions Code §§ 17500, *et seq.* (the "FAL"), and the California Consumers' Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements. 15 U.S.C. § 52(a).

The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. § 52(a)). The FTC has established Guidelines that describe false former pricing schemes, similar to Talbots in all material respects, as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to
> offer a reduction from the advertiser's own former price for an article. If
> the former price is the actual, bona fide price at which the article was

May 17, 2017
Page 3

offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1.

California law also expressly prohibits false former pricing schemes. Cal. Bus. & Prof. Code § 17501, entitled "*Value determinations; Former price advertisements*," states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. [Emphasis added.]

As detailed in Plaintiff's Fifth Cause of Action in the enclosed Complaint, California Civil Code § 1770, subsection (a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

May 17, 2017
Page 4

Talbots' practices have misled Plaintiff and the proposed Class in the past and will continue to mislead in the future. As a result, Talbots' acts and practices constitute violations of Section § 1770(a)(9) and (a)(13) within the meaning of the CLRA.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code § 1782, we hereby demand on behalf of the Plaintiff and all other similarly situated California residents that Talbots immediately correct and rectify these violations of California Civil Code § 1770 by ceasing the misleading marketing and sales discount campaign(s) and ceasing dissemination of false and misleading sale discount information as described in the enclosed Complaint.

In addition, Talbots should offer to refund the purchase price to all consumer purchasers of these Products, plus reimbursement for interest, costs, and fees. Alternatively, Talbots should offer to refund the difference between the advertised "Special Value" regular price for the Product and the price paid for the Product (*i.e.*, the "sales price").

Plaintiff will, after 30 days from the date of this letter, amend the Complaint without leave of Court, as permitted by California Civil Code § 1782, to include claims for actual and punitive damages – as may be appropriate – if a full and adequate response to this demand letter is not received, as well as an award of attorneys' fees and costs. Accordingly, to avoid further litigation, it is in the interest of all parties concerned that Talbots address this problem immediately.

Talbots must undertake all of the following actions to satisfy the requirements of California Civil Code § 1782(c):

1. Identify, or make a reasonable attempt to identify purchasers of the subject Products who reside in California;

2. Notify all such purchasers so identified that upon their request, Talbots will offer an appropriate correction, replacement, or other remedy for its wrongful conduct, which can include a full refund of the purchase price paid for such Products, plus interest, costs and fees; or a partial refund as described herein;

3. Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all Talbots purchasers who so request; and

4. Cease from expressly or impliedly representing to consumers that these Products are offered at a discounted price or sale price or at a certain

May 17, 2017
Page 5

percentage off from a false regular price, or otherwise comply with California law in the offering of its sale discounted Products.

If you have any questions regarding this notice and demand, feel free to contact me.

Very truly yours,

Zev B. Zysman

Enclosures

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF VENTURA

800 South Victoria Avenue
Ventura , CA 93009
(805) 289-8525
WWW.VENTURA.COURTS.CA.GOV

## NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

### Case Number: 56-2017-00496659-CU-BT-VTA

Your case has been assigned for all purposes to the judicial officer indicated below.

A copy of this Notice of Case Assignment and Mandatory Appearance shall be served by the filing party on all named Defendants/Respondents with the Complaint or Petition, and with any Cross-Complaint or Complaint in Intervention that names a new party to the underlying action.

| ASSIGNED JUDICIAL OFFICER | COURT LOCATION | DEPT/ROOM |
|---|---|---|
| Hon. Vincent O'Neill | Ventura | 41 |

| HEARING | MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default | |
|---|---|---|

| EVENT DATE | EVENT TIME | EVENT DEPT/ROOM |
|---|---|---|
| 10/16/2017 | 08:15 AM | 22B |

## SCHEDULING INFORMATION

**Judicial Scheduling Information**

**AT THE ABOVE HEARING IS MANDATORY.**
Each party must file a Case Management Statement no later than 15 calendar days prior to the hearing and serve it on all parties. If your Case Management Statement is untimely, it may NOT be considered by the court (CRC 3.725).
If proof of service and/or request for entry of default have not been filed: At the above hearing you are ordered to show cause why you should not be compelled to pay sanctions and/or why your case should not be dismissed (CCP 177.5, Local Rule 3.17).

**Advance Jury Fee Requirement**

At least one party demanding a jury trial on each side of a civil case must pay a non-refundable jury fee of $150. The non-refundable jury fee must be paid timely pursuant to Code of Civil Procedure section 631.

**Noticed Motions/Ex Parte Matters**

To set an ex parte hearing, contact the judicial secretary in the assigned department. Contact the clerk's office to reserve a date for a law and motion matter.

**Telephonic Appearance**

Telephonic appearance at the Case Management Conference is permitted pursuant to CRC 3.670. In addition, see Local Rule 7.01 regarding notice to the teleconference provider. The court, through the teleconference provider, will contact all parties and counsel prior to the hearing.

Date: 05/18/2017

Clerk of the Court,
By: _____
Jill Kaminski, Clerk

VEN-FNR082

NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Zev B. Zysman (176805)
LAW OFFICES OF ZEV B. ZYSMAN, APC
15760 Ventura Boulevard, 16th Floor, Encino, CA 91436

TELEPHONE NO.: (818) 783-8836   FAX NO.: (818) 783-9985
ATTORNEY FOR (Name): LYNETTE FLIEGELMAN

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA
STREET ADDRESS: 800 SOUTH VICTORIA AVENUE
MAILING ADDRESS:
CITY AND ZIP CODE: Ventura, CA 93009
BRANCH NAME: MAIN COURTHOUSE

CASE NAME:
Lynette Fliegelman v. The Talbots, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | |
|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder | |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | |

FOR COURT USE ONLY

VENTURA
SUPERIOR COURT
FILED

MAY 17 2017

MICHAEL D. PLANET
Executive Officer and Clerk
BY: JILL KAMINSKI Deputy

CASE NUMBER:
56-2017-00496659-CU-BT-VTA

JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (specify): Five
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 17, 2017

Zev B. Zysman, Esq.
(TYPE OR PRINT NAME)                    ▶    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkFlow.com

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

# LAW OFFICES OF ZEV B. ZYSMAN
### A PROFESSIONAL CORPORATION

15760 Ventura Boulevard, 16th Floor
Encino, California 91436
818.783.8836 Main | 818.783.9985 Fax

May 17, 2017

<u>VIA CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

Chief Executive Officer
Lizanne Kindler
The Talbots, Inc.
One Talbots Drive
Hingham, MA 02043

      Re:    *Fliegelman v. The Talbots, Inc.*

Dear Ms. Kindler:

      We represent Lynette Fliegelman (Plaintiff) and all other similarly situated California residents described in the operative Complaint (enclosed for your reference), on whose behalf we are sending this letter pursuant to California Civil Code § 1782 in order to notify The Talbots, Inc. ("Talbots") of the nature of her claim, and to demand curative actions. This action against Talbots arises of its false and misleading advertising and marketing of purported "regular" prices, and corresponding phantom "savings" on women's clothing, shoes, accessories, and other accessories sold at Talbots Outlet stores in California (the "Products").

      As you are aware, Talbots routinely offers its Products for sale in its Outlet stores in California at substantial discounts. Talbots conveys its deceptive pricing scheme to consumers through promotional materials, in-store-displays, and print advertisements. The pricing scheme is prominently displayed, advertising deep discounts from the "regular" prices listed on the original price tag. Specifically, the words "Special Value" are set forth on every price tag in the Outlet stores to indicate the "regular" price at which merchandise was purportedly offered for sale. The represented, "Special Value" prices on the price tags were also false "regular" prices; utilized only to perpetuate Talbots deceptive discount scheme. There are typically large signs on top of or alongside each rack of clothing or accessories, advertising a "discounted % off," or a "discounted whole-price" reduction for the item. For example, a Product may have a price tag with a "regular" price of $89.50 and the related signage advertising "40% Off Regular-Price Items," which is substantially less than the regular price listed on the price tag.

May 17, 2017
Page 2

Another example is a Product having a price tag with a "regular" price of $69.50 and the related signage advertising a "sale price" of $29.99. Furthermore, upon check-out, Talbots provides California consumers, including Plaintiff, with sales receipts continuing the misrepresentations regarding false price reductions. For example, the stated *discount* from the false former "regular" price is listed for each item purchased.

However, the "Special Value" regular prices listed on the price tags have never existed and/or were not the prevailing market retail prices for such products within the three months next immediately preceding the publication of the price tags, as required by California law. They are fictional creations intentionally designed to enable Talbots' phantom markdowns. Additionally, Talbots offers for sale Products manufactured exclusively and intended solely for sale in its Outlet stores. Further exacerbating consumers' perception of deep discounts is the fact that Defendant sells higher quality products at its company-operated mainline retail stores. Talbots knows that consumers expect to receive a discount when shopping at its Outlet stores, and accordingly, preys on consumer expectations by artificially marking up the regular price of its Products and then offering discounts off of the artificially inflated regular price to induce consumers to purchase their Products. The regular price exists to provide an illusory discount when compared to the actual sales price offered.

Through its false and deceptive marketing, advertising and pricing scheme, Talbots has violated, and continues to violate California law prohibiting advertising goods for sale as discounted from purported former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions. Indeed, Talbots used fabricated regular prices which did not reflect a price at which Talbots' Products are routinely, if ever, sold to customers. Specifically, Talbots has violated, and continues to violate, California's Business & Professions Code §§ 17200, *et seq.* (the "UCL"), California's Business & Professions Code §§ 17500, *et seq.* (the "FAL"), and the California Consumers' Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements. 15 U.S.C. § 52(a).

The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. § 52(a)). The FTC has established Guidelines that describe false former pricing schemes, similar to Talbots in all material respects, as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to
> offer a reduction from the advertiser's own former price for an article. If
> the former price is the actual, bona fide price at which the article was

May 17, 2017
Page 3

offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith -- and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1.

California law also expressly prohibits false former pricing schemes. Cal. Bus. & Prof. Code § 17501, entitled *"Value determinations; Former price advertisements,"* states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

*No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. [Emphasis added.]

As detailed in Plaintiff's Fifth Cause of Action in the enclosed Complaint, California Civil Code § 1770, subsection (a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

May 17, 2017
Page 4

Talbots' practices have misled Plaintiff and the proposed Class in the past and will continue to mislead in the future. As a result, Talbots' acts and practices constitute violations of Section § 1770(a)(9) and (a)(13) within the meaning of the CLRA.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code § 1782, we hereby demand on behalf of the Plaintiff and all other similarly situated California residents that Talbots immediately correct and rectify these violations of California Civil Code § 1770 by ceasing the misleading marketing and sales discount campaign(s) and ceasing dissemination of false and misleading sale discount information as described in the enclosed Complaint.

In addition, Talbots should offer to refund the purchase price to all consumer purchasers of these Products, plus reimbursement for interest, costs, and fees. Alternatively, Talbots should offer to refund the difference between the advertised "Special Value" regular price for the Product and the price paid for the Product (*i.e.*, the "sales price").

Plaintiff will, after 30 days from the date of this letter, amend the Complaint without leave of Court, as permitted by California Civil Code § 1782, to include claims for actual and punitive damages – as may be appropriate – if a full and adequate response to this demand letter is not received, as well as an award of attorneys' fees and costs. Accordingly, to avoid further litigation, it is in the interest of all parties concerned that Talbots address this problem immediately.

Talbots must undertake all of the following actions to satisfy the requirements of California Civil Code § 1782(c):

1. Identify, or make a reasonable attempt to identify purchasers of the subject Products who reside in California;

2. Notify all such purchasers so identified that upon their request, Talbots will offer an appropriate correction, replacement, or other remedy for its wrongful conduct, which can include a full refund of the purchase price paid for such Products, plus interest, costs and fees; or a partial refund as described herein;

3. Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all Talbots purchasers who so request; and

4. Cease from expressly or impliedly representing to consumers that these Products are offered at a discounted price or sale price or at a certain

May 17, 2017
Page 5

> percentage off from a false regular price, or otherwise comply with California law in the offering of its sale discounted Products.

If you have any questions regarding this notice and demand, feel free to contact me.

Very truly yours,

Zev B. Zysman

Enclosures